THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* C. P. WARD, INC., Defendant.

City Court of Rochester, Criminal Branch, April 5, 1947.

*Daniel J. O'Mara, District Attorney (John C. Little, Jr., of counsel), for plaintiff.*

*Casper V. Baltensperger* and *William H. Morris* for defendant.

OGDEN, J. The defendant, C. P. Ward, Inc., is charged with a violation of subdivision 1 of section 12 of the Vehicle and Traffic Law in that it, through its employee, operated or drove a motor vehicle on the public highways without having a distinctive number assigned to it by the Commissioner of Motor Vehicles and without displaying a number plate corresponding to that of the certificate of registration. Defendant admits that no number

plate was displayed on the vehicle in question, for the reason that it was never registered as a motor vehicle; it claims that the vehicle is a " tractor crane " (Vehicle and Traffic Law, § 2, subd. 8) and exempt from the regulations governing motor vehicles, including registration.

The vehicle in question is called a Thew-Lorain Moto-Crane and was purchased by defendant January 3, 1947. This Moto-Crane consists of a chassis twenty-three feet eleven inches in length and eight feet wide, mounted upon two single wheels in front and four sets of double wheels in the rear. At the left front end of the chassis is a cab in which the operator of the vehicle sits while moving it from one place to another. On the rear is mounted the crane housing, in a separate cab containing the hoisting mechanism, from which the crane itself is operated while on a job; from this cab extends the boom, varying in length from thirty to seventy-five feet. While moving from place to place the boom is lowered toward the front and beside the driver's cab. The crane housing is mounted on a turntable welded to the chassis, and may be removed, although the chassis alone could not be readily adapted to any other use. The Moto-Crane weighs 50,000 pounds, although the manufacturer's specifications point out that the total weight of unit may be reduced 10,200 pounds " for road travel " by removing certain equipment. For traveling the unit is equipped with ten pneumatic tires 42 inches in outside diameter and has a maximum forward speed of twenty-eight miles per hour; it is propelled by a gasoline engine and is equipped with headlights, parking lights, tail and license lights at rear, springs, transmission, electric starter, speedometer, horn; in fact, everything commonly used on a heavy-duty truck. The unit may be used as a dragline, pile driver, shovel, hoe, clamshell or crane. During 1946 a similar unit owned by this defendant spent about 10% of its working time on public highways. The manufacturer of the unit divides its specifications into two parts — those of " The Moto-Crane Full Revolving Turntable " and those of " The Moto-Crane 3 Axle Carrier."

Is the " Moto-Crane " in question a " motor vehicle ", which must be registered and display a distinctive number plate, or is it a " tractor crane ", which need not be registered and which need conform to none of the requirements of the Vehicle and Traffic Law? An examination of the few decisions of the courts of this State and the opinions of the Attorney-General which have classified certain vehicles as " motor vehicles " or " tractor

cranes " shows clearly that such classification is limited to the facts established in the particular case.

In 1936 the Attorney-General stated: " ' Such a tractor when used about the farm will not wear out the highways to any great extent. Ordinarily, it will be operated on the public highways only occasionally and for short distances as between two fields, between field and barn or between two farms. For such short and occasional movements, exemption from registration is reasonable and warranted as is the exemption from the necessity of having a licensed driver '." (57 N. Y. St. Dept. Rep. 244, 245.)

In *People* v. *Cox Construction Co., Inc.* (172 Misc. 244), the court held that a motor truck capable of a speed of thirty miles per hour, upon which was permanently mounted a large crane was a " motor vehicle ", *not* a " tractor crane ", and was subject to the requirements of the Vehicle and Traffic Law. This decision was affirmed in 259 Appellate Division 707.

In *People* v. *Bay Ridge Operating Co., Inc.* (259 App. Div. 260) the court held that a small, four-wheeled electric truck on which an electrically operated crane was permanently mounted, which truck was capable of a maximum speed of ten miles per hour and was operated and used principally on private piers, but which once a month travelled on the public highway for a distance of eight miles, was not a " motor vehicle " and not the subject of registration as such.

In 1941 the Court of Appeals in *People* v. *Jarka Corp.* (285 N. Y. 548) reversed judgments of conviction of violation of the Vehicle and Traffic Law, without opinion (p. 549), " on the ground that the instrumentality is a tractor crane within the meaning of the statute." The vehicle in question was gasoline driven, a *farm tractor* of the usual wheel type, adapted for use on *floors* or *piers* by having hard rubber tires in place of the iron tires (or pneumatic tires) with which farm machines are usually equipped; mounted on it was a crane arm projecting in front and a hoist in the rear; the only occasion for its traveling on public highways was to move under its own power from one pier to another when its place of work was changed.

It seems apparent that the vehicle in the case at bar more closely resembles the vehicle in the *Cox* case (*supra*) than the vehicles involved in the other cases referred to. This Moto-Crane has all the equipment usually found on a truck or other motor vehicle; it has a speed of twenty-eight miles per hour; it is actually a truck chassis upon which has been permanently mounted a crane boom and housing. Although it was stated

that the Moto-Crane was on the public highways about 10% of its working time an examination of the various locations at which a similar vehicle operated in 1946 demonstrates that the territory in which it operated included the entire city of Rochester and its environs. Such a use of the public highways differs greatly from the use by the farm tractor referred to in the ·Attorney-General's opinion or by the vehicles in the *Bay Ridge Operating Co.* and *Jarka Corp.* cases (*supra*). The very advancements and refinements in construction of this Moto-Crane seem calculated to increase its mobility and speed of movement from one point to another, rather than its stability while at a particular location.

I find the vehicle in question to be a " motor vehicle ", not a " tractor crane ", and adjudge the defendant guilty. Since the record discloses an honest doubt on the part of the defendant as to the applicability of the statute in question to it, rather than a willful violation, sentence is suspended.